IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY AGNEW (M-04442), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 C 0043 |
| ) | |
| ) | Judge John W. Darrah |
| MARCUS HARDY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Timothy Agnew, an Illinois prisoner currently incarcerated at the Vandalia Correctional Center, filed this 42 U.S.C. § 1983 action against Stateville Correctional Center Warden Marcus Hardy and Northern Reception Center Officers Sanders and Abernathy ("Defendants"). The Northern Reception Center ("NRC") is an area of Stateville where Illinois prisoners are housed following their convictions while being assigned to an Illinois correctional facility. Plaintiff contends that the conditions of his confinement at NRC, where he was housed from April 27 to July 2, 2010, were unconstitutional (infestation of insects and rodents, stained toilet, no cleaning supplies, stained bed linens, and a damp mattress). Defendants have filed a motion for summary judgment, in which they argue: (1) Plaintiff failed to exhaust administrative remedies and (2) the conditions he allegedly experienced did not rise to the level of a constitutional violation. Plaintiff has not responded to the motion for summary judgment, despite the Court granting his motion for extension of time to respond. Considering the summary judgment motion without the benefit of a response, the Court grants the motion.

# I. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden of showing that there are no issues of material fact and that he or she is entitled to a judgment as a mater of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

When addressing a summary judgment motion, a court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with

admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Because Plaintiff is proceeding *pro se*, the Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. (R. 53.) The notice explains that a litigant's failure to respond to the movant's Local Rule 56.1 Statement results in this Court considering uncontroverted statements admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Although Plaintiff requested and received additional time to respond (R. 55, 56), he has not done so. This Court may thus consider the facts stated in Defendants' Rule 56.1 Statement admitted, to the extent they are supported by the record. *Raymond*, 442 F.3d at 608.

## II. FACTS

Plaintiff was incarcerated at Stateville Correctional Center, in its Northern Reception Center ("NRC") from April 27, 2010, to July 2, 2010. (R. 52, Defs.' Rule 56.1 Statement ¶ 7.) According to Plaintiff's complaint and deposition, his mattress was damp, the sheet did not cover the entire mattress, and Defendant Officer Abernathy never responded to Plaintiff's complaint about the mattress. (*Id.* at ¶ 8.) Plaintiff states that he noticed fruit flies around his cell, that the flies would land of him, but that he was not bitten by them. (*Id.* at ¶¶ 9-10.) Plaintiff further alleges that the toilet in his cell was metal, had a brown and green film inside it, flies would fly aound the toilet, and the toilet would flush every five to ten minutes. (*Id.* at ¶11.) The sink allegedly had soap scum in its drain and around its basin. The sink had running water, including hot water, though sometimes only cold water came out when the hot water button was pushed. Nevertheless, Plaintiff was able to wash his clothes and wash off some of the soap scum. (*Id.* at ¶ 12.) Plaintiff stated that he noticed rats and mice around his cell, but that he was never bitten or touched by them. (*Id.* at ¶ 13.) Critter Ridder was the exterminator for Stateville and used sign-in sheets when it sprayed an area of the prison. The sign-in sheets indicate that Critter

Ridder sprayed his area of the prison once a month (April 8, May 10, and June 10, 2010) during the time Plaintiff was housed at NRC. (*Id.* at ¶¶ 14-15.) Plaintiff alleges that he was not given cleaning supplies, he used food trays as shower shoes, and he developed a rash while he was at NRC. (*Id.* at ¶¶ 16-17, 19.) Sometime after leaving NRC, Plaintiff was treated for jock itch at Pickneyville Correctional Center, where he was transferred. (*Id.* at ¶ 18.)

Plaintiff filed one grievance while at Stateville, complaining that he cell neeeded cleaning, that his requests for cleaning supplies were ignored, and that he developed several rashes. Plaintiff sought "urgent medical attention." (*Id.* at ¶ 20; R. 52-6, Exh. F, Copy of 6/14/10 Grievance.) The grievance was filed as an emergency one on June 14, 2010. (R. 52, Defs' Rule 56.1 Statement ¶ 20.) On June 24, 2010, the grievance was returned to Plaintiff with an explanation that the grievance was not an emergency and that he should sumbit the grievance in the normal manner. (*Id.* at ¶ 22.) Plaintiff neither appealed this response, nor did he re-submit his grievance as a non-emergency one. (*Id.* at ¶ 23.) Plaintiff explained in his deposition that he took no further action with a grievance because, at the time he received a response, the process of transferring him to Pinckneyville had begun. He did not pursue a grievance after his arrival at Pinckneyville because he received medical care at that facility. (*See* R. 52-2, Pl.'s Depo. at 42.)

### III. DISCUSSION

**Exhaustion:**

The Prisoner Litigation Reform Act requires that, "[n]o action shall be brought with respect to prison conditions under section 1983 ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The requirement to exhaust provides "that no one is entitled to judicial

relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Woodford v. Ngo*, 548 U.S. at 90. A prison's administrative authority can refuse to hear a complaint, if the inmate fails to use a prison's grievance process properly. *Pozo*, 286 F.3d at 1025; *see also Woodford*, 548 U.S. at 89-90. However, prison officials cannot prevent an inmate from exhausting administrative remedies by ignoring properly filed grievances or by impeding the use of the grievance system. Such barriers render administrative remedies unavailable and do not bar an inmate from filing suit for the unexhausted claim. *See Kaba v. Stepp*, 458 F.3d 678, 684-85 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).

Illinois' Administrative Code sets out the procedures for filing a grievance and appealing grievance decisions. The first step is to submit an informal grievance to the prisoner's counselor. *See Dole*, 438 F.3d at 807 (citing 20 Ill. Admin. Code § 504.810(a)). "If the prisoner is not satisfied with the counselor's resolution of the complaint, he may then submit a formal grievance to the prison's grievance officer." *Dole*, 438 F.3d at 807; *see also Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011); § 504.810 (a) and (b). The grievance officer has the authority to investigate the grievance, including interviewing the prisoner and witnesses and reviewing the relevant documents. *See Dole*, 438 F.3d at 807 (citing § 504.810). The grievance officer then submits a recommendation to the facility's

Chief Administrative Officer (here, the warden) who makes a final decision at the institution level. *Dole*, 438 F.3d at 807 (citing § 504.830(d)). Thereafter, within 30 days after the warden's decision, a prisoner may appeal a warden's determination to the Director of the Illinois Department of Corrections, who determines whether the grievance needs to be submitted to and heard by the Administrative Review Board ("ARB"). *Dole*, 438 F.3d at 807 (citing 20 Ill. Admin. Code § 504.850(a)); *see also Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005); *Smith v. Hardy*, No. 10 C 6436, 2012 WL 2127488 at *3 (N.D. Ill. June 12, 2012) (St. Eve, J.) Where the inmate has been transferred from a facility during or prior to beginning the grievance process, the inmate may skip the initial steps and file a grievance directly with the ARB. § 504.870(a)(4); *see also Brown v. Walker*, No. 07-cv-758, 2010 WL 1415989 at *2 (S.D. Ill. Mar. 31, 2010) (Reagan, J.).

In the instant case, Plaintiff admits that he submitted only one grievance in June 2010, stating that his cell needed cleaning and he needed medical attention for a rash. (R. 52-2, Exh. B, Pl.'s Depo at 37-39 and 45) (Plaintiff stated in his deposition, "The whole time I was at NRC, I only filled out one grievance.") He marked his grievance as an emergency, which would be reviewed by the warden. (*Id.* at 40-41.) When the grievance was returned to him with the response that it was not an emergency and that he needed to refile it as a regular grievance, he neither appealed that determination nor filed a non-emergency grievance. Plaintiff explained that he did not pursue the grievance process because he was being transferred to another facility. (*Id.* at 41-42.) Plaintiff further stated that he never sought to meet with his counselor at Stateville's NRC to complain about the conditions of his cell or other issues. (*Id.* at 42-43.) The record thus clearly establishes that Plaintiff did not "file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole*, 438 F.3d at 809.

Plaintiff stated as his reason for not contacting his counselor that: "the counselors at the NRC . . . didn't do nothing" and he "didn't know that [he] could . . . bring that (his cell condition issues) to the counselor." (R. 52-2, Pl.'s Depo. at 43.) Neither Plaintiff's belief that counselors "did nothing" nor his lack of knowledge that he could contact the counselor about cell conditions are valid grounds to excuse the exhaustion requirement. *See Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) ("Exhaustion is required even if the prisoner believes his efforts in securing relief will be futile."); *Nichols v. Walker*, No. 08-cv-338, 2010 WL 55676 at *9 (S.D. Ill. Jan. 5, 2010) ("Ignorance of the law cannot be used to avoid a procedural prerequisite") (Herndon, J.) (citing *Wilson v. Battles*, 302 F.3d 745, 748 (7th Cir. 2002)). Furthermore, Plaintiff stated that he was told about the grievance process and given a handbook on his first day at NRC, (R. 52-2, Pl.'s Depo. at 9-11), and he attached part of the handbook to his complaint. (R. 8, Amended Compl. at 19.)

For the reasons stated above, the record demonstrates that Plaintiff did not exhaust administrative remedies for the claims he seeks to bring here, and that his failure to exhaust warrants dismissal of this case pursuant to 42 U.S.C. § 1997e.

**Conditions of Confinement:**

In addition to Plaintiff's failure to exhaust, this case must be dismissed because the conditions of confinement described by Plaintiff do not rise to the level of a constitutional violation. Those conditions include the following: a damp mattress with linens that did not fully cover it; fruit flies in his cell and around his toilet; a brown and green stain on the inside of his toilet; soap scum in the sink of his cell; and the occasional presence of mice and rats. (R. 52, Defs' Rule 56.1 Statement ¶¶ 7-13.)

To prove an unconstitutional condition of confinement, a plaintiff must establish both: (1) the conditions were "sufficiently serious" such that they denied him of the "minimal civilized measure of

life's necessities," and (2) the defendants acted with deliberate indifference to those conditions, i.e., they actually knew of the conditions but refused to take reasonable steps to resolve them. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008), quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994).

Plaintiff's allegations of the presence of fruit flies and occasional sighting of mice during his two and one-half month stay at the NRC cannot establish an objectively serious condition. Valid claims of an unconstitutional condition based upon pest infestation involve far more severe situations. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir.1996) (allegation that roaches and mice were rampant, crawling on inmate's body stated a claim of an unconstitutional condition of confinement, particularly where the jail had sprayed only twice during a 16-month period ); *White v. Monohan*, 326 Fed. Appx. 385, 388, 2009 WL 1034265, 3 (7th Cir. 2009) (five-year exposure to roaches, mice, bees, and wasps that stung and bit detainee stated a claim of unconstitutional condition of confinement); *see also Moore v. Monahan*, No. 06 C 6088, 2009 WL 310963 at *7 (N.D. Ill. Feb. 9, 2009) (St. Eve, J.) (five and one-half months of exposure to insects, during which inmate was never bitten, did not amount to a constitutional violation).

Furthermore, the once-a-month spraying by an exterminator, which Plaintiff does not dispute, demonstrates that he cannot establish that Defendant consciously disregarded a pest infestation. *See Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008) (evidence of an exterminator spraying an area of facility once a month indicated no deliberate indifference); *Moore*, 2009 WL 310963 at *7; *Barbosa v. McCann*, No. 08 C 5012, 2012 WL 4471218 at 3 (N.D. Ill. Sept. 26, 2012) (Pallmeyer, J.) (same).

Plaintiff's other conditions of a damp mattress with sheets that did not totally cover it and a stained toilet similarly do not rise to the level of unconstitutional. "The Constitution does not mandate

comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (citing *Farmer*, 511 U.S. at 832). Courts have found no constitutional violation with respect to similar conditions. *Barbosa v. McCann*, No. 08 C 5012, 2012 WL 4471218 at *3 (N.D. Ill. Sept. 26, 2012) (sleeping on a stained mattress with a sheet that did not completely cover it was not an unconstitutional condition of confinement); *Sanchez v. Walker* No. 09 C 2289, 2010 WL 5313815 at *7 (N.D. Ill. Dec. 17, 2010) (Coleman, J.) ("more insects, less trash removal, a stained toilet, and a lack of cleaning supplies ... are not so harsh or atypical of the ordinary incidents of prison life to give rise to constitutional due process concerns"). Plaintiff's conditions, which he experienced for only a little more than two months (the Court has generously referred to the period of time as two and one-half months throughout this opinion), simply do not rise to the level of unconstitutional.

Accordingly, the undisputed evidence demonstrates both that Plaintiff did not exhaust administrative remedies with respect to any of his claims in this case, and the conditions of his confinement were not so harsh to amount to a constitutional violation.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment [50] is granted. Plaintiff's complaint is dismissed. Judgement is rendered in favor of Defendant. This case is closed.

DATED: **November 5, 2012**

**John W. Darrah**
**United States District Court Judge**